**Burton F. TUCKER, Plaintiff,**

v.

**BANKNORTH, NA, Defendant.**

**No. 02 CV 3321(ADS)(WDW).**

United States District Court,
E.D. New York.

Aug. 30, 2004.

Burton F. Tucker, Waynesboro, PA, Plaintiff, Pro Se.

Brauner Baron Rosenzweig & Klein, LLP by Jon D. Kaplon, Esq., Leslie S. Barr, Esq., New York City, for Defendant.

SPATT, District Judge.

Presently before the Court are the following four motions: (1) a motion by the defendant Banknorth, N.A. ("Banknorth" or the "defendant") for reconsideration of the Court's December 30, 2003 Order; (2) a motion by the defendant for summary judgment on its counterclaim; and (3) a motion by the plaintiff Burton Tucker ("Tucker" or the "plaintiff") to file a surreply to his opposition to the defendant's motion for summary judgment; and (4) a cross-motion by the plaintiff to dismiss the defendant's counterclaim.

## I. BACKGROUND

### A. Procedural Background

This action has been marked by a myriad of motions which the Court now attempts to chronologically outline. However, only the relevant motions and decisions are set forth, and the motions outlined below are not exhaustive. On June 6, 2002, the plaintiff commenced this diversity action against RW Professional Leasing Corp. ("RW Leasing"), Barry Drayer ("Drayer"), Susan Cottrell ("Cottrell"), Banknorth, and Tracey L. Cook ("Cook") for fraud, constructive fraud, conspiracy to commit fraud, and intentional infliction of emotional distress. On July 12, 2002, Banknorth answered the complaint and included several affirmative defenses and counterclaims. On January 21, 2003, the plaintiff filed a motion for an order allowing him to terminate or suspend his payments to Banknorth under an Equipment Financing Agreement ("Lease Agreement").

On March 1, 2003, the Court granted a motion to dismiss by Drayer and Cottrell for lack of personal jurisdiction and by RW Leasing for failure to state a claim. In addition, the Court granted the plaintiff leave to file an amended complaint within thirty days of the date of the Order. The Court further denied the plaintiff's motions to strike Banknorth's affirmative defenses and to dismiss Banknorth's counterclaims.

On March 4, 2003, the plaintiff filed an amended complaint against RW Leasing, Drayer, Cottrell, Banknorth, Cook, and added Rochelle Besser ("Besser"). On March 27, 2003, the plaintiff moved to withdraw his amended complaint and for leave to file a second amended complaint. On the same day, the Court granted his motion and directed him to file his second amended complaint by May 1, 2003. On March 31, 2003, the plaintiff filed his second amended complaint against RW Leas-ing, Drayer, Cottrell, Banknorth, and Besser but did not include Cook in his new complaint.

On May 6, 2003, the Court denied the plaintiff's January 21, 2003 motion and found that, based on the express terms of the Lease Agreement, the plaintiff waived any right to claim that Banknorth is not entitled to its monthly payments.

On May 27, 2003, the defendant filed an amended counterclaim against the plaintiff for a money judgment for the plaintiff's alleged breach of his payment obligations under the Lease Agreement.

On May 30, 2003, the plaintiff filed a notice of voluntary dismissal pursuant to Rule 41 of the Federal Rules of Civil Procedure. As such, the Court "so ordered" the dismissal, and the case was closed. On June 19, 2003, the Court directed the Clerk of the Court to re-open the case so that Banknorth could proceed with its counterclaim. On August 12, 2003, the plaintiff filed a motion for leave to reply to Banknorth's counterclaim and to include a counterclaim in his reply.

On October 2, 2003, the defendant filed a motion for an order granting Banknorth summary judgment on its amended counterclaim.

On December 30, 2003, the Court granted the plaintiff's motion for leave to file an answer to the defendant's counterclaim and permitted him to include a counterclaim in its answer. However, to avoid a potential series of counterclaims, the Court instructed the plaintiff to file an amended complaint as to Banknorth within thirty days from the date of the Order. The Court notes that the plaintiff failed to file a second amended complaint.

On January 6, 2004, the plaintiff filed a motion for leave to amend his opposition to the defendant's motion for summary judg-

ment, which the Court construes as a motion to file a sur-reply. On January 16, 2004, the defendant filed a motion for reconsideration of the Court's December 30, 2003 Order granting the plaintiff the right to file a second amended complaint and in opposition to the plaintiff's motion to file a sur-reply. On February 17, 2004, the plaintiff filed a cross-motion to dismiss the defendant's counterclaims and to oppose the defendant's motion for reconsideration.

## B. Factual Background

The background of this case is set forth in the Court's Memorandum of Decision and Order, dated March 1, 2003, familiarity with which is assumed. The following material facts are undisputed unless otherwise noted. The defendant claims that, in February 2002, the plaintiff entered into a Lease Agreement with RW Leasing. The plaintiff counters that he never entered into the Lease Agreement because RW Leasing never accepted the plaintiff's offer to accept the terms of the agreement.

A copy of the Lease Agreement shows that Susan Cottrell, the representative of RW Leasing, signed the agreement on March 8, 2002 and that the plaintiff signed it on February 27, 2002. Paragraph 15 of the Lease Agreement states in bold capital letters that:

**THIS AGREEMENT HAS BEEN DULY AUTHORIZED BY DEBTOR AND UPON EXECUTION BY DEBTOR SHALL CONSTITUTE THE LEGAL, VALID AND BINDING OBLIGATION OF DEBTOR ENFORCEABLE AGAINST DEBTOR IN ACCORDANCE WITH ITS TERMS.**

It is undisputed Tucker executed and delivered to RW Leasing a Delivery and Acceptance Receipt and a Collateral Acceptance and Pledge Agreement. It is further undisputed that the plaintiff exe-cuted and delivered to RW Leasing a Personal Guarantee concerning the Lease Agreement.

The Lease Agreement permitted RW Leasing to assign its rights under the agreement. Paragraph 18 of the Lease Agreement reads, in pertinent part:

**Creditor may assign, pledge or otherwise transfer any of its rights hereunder without notice to Debtor. If Debtor is given notice of any such assignment, Debtor shall acknowledge receipt thereof in writing and shall thereafter pay any amounts due hereunder as directed in the notice. The rights of an assignee to amounts due hereunder shall be free of any claim or defense Debtor may have against Creditor, and Debtor agrees not to assert against an assignee any claim or defense which Debtor may have against Creditor.**

On March 13, 2002, RW Leasing and Banknorth executed an Assignment of Lease and a Sale and Servicing Agreement, whereby RW Leasing assigned the Lease Agreement and Personal Guaranty to Banknorth for the sum of $144,482.25. Banknorth was to pay to RW Leasing the consideration for the assignment by a wire transfer in the amount of $134,547.42 plus a deposit in the sum of $9,934.83 into a Certificate of Deposit in the name of RW Leasing, which was to serve as security for the defendant's investment.

On March 13, 2002, Banknorth wired the sum of $134,547.42 to RW Leasing's Loan Clearing Account and deposited an amount of $9,934.83 to RW Leasing Certificate of Deposit. Attached to the defendant's motion are: (i) the Outgoing Wire Transfer Request, (ii) Confirmation of the Completion of the Wire Transfer, (iii) a copy of the Deposit Slip for the $9,934.83 credit to the Certificate of Deposit account, (iv) a

copy of the Debit Memo recording the loan advance to RW Leasing on Banknorth's general ledger, and (v) a copy of the Checking Credit Memo recording the wire transfer in the amount of $134,547.42 to RW Leasing.

On April 8, 2002, in response to Banknorth's written request, the plaintiff confirmed the terms of the Lease Agreement, without noting any exceptions. The Lease Agreement obligates the plaintiff to make 72 consecutive monthly payments. Each of the payments for one through 12 is in the amount of $99, and each of the payments for 13 through 72 is in the amount of $2,961, for an aggregate sum of $178,848. At the time he entered into the Lease Agreement, the plaintiff prepaid his final payment of $2,961. Thereafter, the plaintiff made a total of 11 payments of $99 each from March 2002 through January 2003, aggregating a total of $1,089. Thus, to date, his payments are in the sum of $4,050. The plaintiff did not make payments of $99 under the Lease Agreement for February, and of $2,961 for March, April, May and June 2003.

Paragraph 16 of the Lease Agreement sets forth the remedies to which Banknorth is entitled in the event of the plaintiff's failure to make payments under the Lease Agreement, including, without limitation, acceleration of the plaintiff's obligations under the Lease Agreement. Pursuant to this paragraph, Banknorth accelerated the plaintiff's payment obligations under the Lease Agreement and a notice of default and acceleration was sent to the plaintiff by certified mail, return receipt requested and first class mail on May 15, 2003.

In addition, Paragraph 17 provides that, "Debtor shall pay Creditor its costs and expenses not offset as provided in paragraph 16, including repossession and attorneys' fees and court costs incurred by Creditor in enforcing this Agreement. This obligation includes the payment of such amounts whether an action is filed and whether an action which is filed is dismissed or settled." The defendant claims that the plaintiff is liable to Banknorth under the Lease Agreement in the amount of $174,798, plus costs and attorney's fees.

## II. DISCUSSION

### A. The Defendant's Motion for Reconsideration

██ Pursuant to Fed.R.Civ.P. 60(b)(1) and (6), Banknorth moves for reconsideration of the Court's December 30, 2003 which permitted the plaintiff to file an amended complaint against the defendant within thirty days from the date of the Order. The defendant explains that it did not file a separately designated response to the plaintiff's motion but that its opposition was set forth in its motion for summary judgment.

Relief under Rule 60(b) is "invoked only upon a showing of exceptional circumstances." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir.1986). Rule 60(b)(1) permits a court to vacate a final judgment or order because of "mistake, inadvertence, surprise, or excusable neglect." Fed.R.Civ.P. 60(b)(1). Rule 60(b)(6), the catch-all provision, provides relief "for any other reason justifying relief from the operation of the judgment."

The Court notes that, not only did the defendant fail to separately designate its opposition to the plaintiff's motion, which would have been especially important in a case riddled with motions, but the motion for summary judgment which set forth its opposition was not filed until more than one month after the plaintiff filed his motion. Local Rule 6.1(b)(2) provides, in part, that any "answering memoranda

shall be served within ten business days after the service of the moving papers." Thus, Banknorth failed to timely oppose the plaintiff's motion. Based on these two failures and the further reason that, the defendant did not request an extension of time to file its opposition, it was not made clear to the Court that Banknorth even intended to oppose the plaintiff's motion. These errors fall within the ambit of Rule 60(b)(1).

■ However, an attorney's mistake or omission and failure to follow rules and deadlines are not the basis for relieving a party from a final judgment or order. *See Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 250 (2d Cir.1997). While this may be a seemingly harsh result, " 'the conduct of an attorney is imputed to his client, for allowing a party to evade the consequences of the acts or the acts or omissions of his freely selected agent would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent.' " *Alvarado v. Manhattan Worker Career Ctr.*, No. 01 Civ. 9288, 2003 WL 22462032, at *2, 2003 U.S. Dist. LEXIS 19339, at *8 (S.D.N.Y. Oct. 29, 2003) (quoting *Aalmuhammed v. Keston*, No. 98 Civ. 171, 2003 WL 118512, 2003 U.S. Dist. LEXIS 415 (S.D.N.Y. Jan. 14, 2003)). Thus, this Court declines to grant relief to the defendant due to its attorney's error. Furthermore, the circumstances in this case are not "exceptional" or "extraordinary" so as to justify a grant of judicial relief under Rule 60(b)(6).

■ The Court nevertheless notes that, although its December 30, 2003 Order permitted the plaintiff to file an amended complaint against the defendant within 30 days from the date of the Order, more than eight months have elapsed and the plaintiff has still not filed an amended complaint. The plaintiff failed to comply with the deadline and has not provided any reasons why he has yet to file an amended complaint. Having granted the plaintiff leave to file an amended complaint three times in this action, and in light of his failure to move forward with his claims against the defendant despite his repeated requests for leave, there comes a point when the Court must say "enough is enough." That point has been reached. Thus, to the extent the plaintiff requests leave to file an amended complaint, that request is denied. The Court will not permit the plaintiff to a file a fourth complaint against Banknorth.

The Court also notes that, when the plaintiff filed his notice of voluntary dismissal pursuant to Fed.R.Civ.P. 41(a)(1), the voluntary dismissal was without prejudice. As such, the plaintiff is not precluded from re-filing an action against the RW Leasing, Drayer, Cottrell, and Besser.

## B. The Defendant's Motion for Summary Judgment

### 1. Standard of Review

A motion for summary judgment should be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of establishing the absence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has met this burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material

facts, or defeat the motion through mere speculation or conjecture." *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (internal quotations and citations omitted); *see Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998).

When deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Vann v. City of New York*, 72 F.3d 1040, 1048–49 (2d Cir.1995). In the case of a *pro se* party, the court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, *pro se* status "'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981)).

The Court notes that the defendant included with its motion a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" which informed Tucker that failure to oppose the motion may result in a dismissal of the complaint. The plaintiff's submission of his counterstatement to the defendant's 56.1 Statement indicates that he was sufficiently apprised of the procedure and its consequences.

### 2. Analysis

Banknorth moves for summary judgment for an order granting it the principal amount of $174,798, plus attorneys' fees and costs under the Lease Agreement, on its amended counterclaim. It is undisputed that, under the express terms of the underlying Lease Agreement in Paragraph 16, Tucker's payment obligations may be accelerated upon his failure to make payments. Banknorth has accelerated the plaintiff's lease obligations and has so notified the plaintiff. It is undisputed that the amount owed to the defendant is $174,798. The plaintiff does not deny that he failed to make his monthly payments in February, March, April, May and June 2003. It is further undisputed that the assignment between RW Leasing and Banknorth was valid.

However, Tucker asserts that the Lease Agreement was never executed because certain terms were never agreed upon and that RW Leasing has failed to fulfill its obligation under the agreement. The Court finds that the plaintiff's conclusory and vague assertions are insufficient to overcome a motion for summary judgment. *See Western World Ins. Co.*, 922 F.2d at 121 (stating that the non-movant must do more than vaguely assert the existence of some unspecified disputed material facts, or defeat a motion for summary judgment through mere speculation or conjecture). It is also worth noting that, in the plaintiff's prior motion and pleadings, the plaintiff never challenged the validity of the Lease Agreement.

In addition, the plaintiff's assertions leave unexplained the fact that Paragraph 15 of the Lease Agreement states in bold capital letters that:

**THIS AGREEMENT HAS BEEN DULY AUTHORIZED BY DEBTOR AND UPON EXECUTION BY DEBTOR SHALL CONSTITUTE THE LEGAL, VALID AND BINDING OBLIGATION OF DEBTOR ENFORCEABLE AGAINST DEBTOR IN ACCORDANCE WITH ITS TERMS.**

Tucker acknowledges that he executed and returned the Lease Agreement and related agreements to RW Leasing, and that RW Leasing endorsed the Lease Agreement upon its receipt.

Furthermore, Paragraph 18 of the Lease Agreement provides, in pertinent part:

> **The rights of the assignee to amounts due hereunder shall be free of any claim or defense [Tucker] may have against [RW Leasing] and [Tucker] agrees not to assert against any assignee any claim or defense which [Tucker] may have against [RW Leasing].**

Based on the clear language set forth in the foregoing paragraph, the plaintiff is barred from asserting "any claim or defense" against Banknorth that he might have against RW Leasing, including his defense that the contract is not binding because its terms are incomplete or that RW Leasing has failed to fulfill its obligations.

The defendants also contend that Tucker is "barred at this late date by every doctrine under the sun—waiver, res judicata, claim preclusion, issue preclusion, law of the case, judicial estoppel, and equitable estoppel—from even raising the argument that the Lease Agreement is not a contract." The defendant points out that, in a May 6, 2003 Order, the Court held that the plaintiff owes monthly payments to Banknorth and that he has waived his right to contest that obligation.

As Banknorth correctly notes, the May 6, 2003 Order may not be reconsidered under the law of the case doctrine. The law of the case doctrine posits that "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case." *United States v. Quintieri,*

306 F.3d 1217, 1230 (2d Cir.2002) (citation omitted). The doctrine therefore precludes review of an earlier decision unless "there has been an intervening change of controlling law, new evidence has become available, or there is a need to correct a clear error or prevent manifest injustice." *DiGuglielmo v. Smith,* 366 F.3d 130, 134 (2d Cir.2004). Tucker has not set forth any reasons justifying a review of the Court's May 6, 2003 Order.

For the foregoing reasons, the Court finds in favor of the defendant granting summary judgment in its favor as a matter of law. The Court need not consider the defendant's additional arguments of, among other things, judicial estoppel, res judicata, and equitable estoppel. In addition, the Court finds that Paragraph 17 obligates the plaintiff to pay Banknorth "its costs and expenses ... including prepossession and attorneys' fees and court costs incurred by [Banknorth] in enforcing this Agreement." Accordingly, Banknorth's motion for summary judgment for a judgment against the plaintiff in the principal amount of $174,798, plus attorneys' fees and costs, on its amended counterclaim is granted. In addition, the Court denies the plaintiff's motion to file a sur-reply to his opposition to the defendant's motion for summary judgment, as the Court does not accept sur-replies.

### C. The Plaintiff's Cross Motion to Dismiss the Defendant's Counterclaim

The plaintiff cross-moves to dismiss the defendant's counterclaim on the ground that he "is preparing a formal criminal complaint against RW Professional Leasing Services Corp., Banknorth, N.A. (defendant) and others which will be sent to the United States Justice Department and others exposing the perpetrators of the fraud and providing certified evidence of such fraud." The Court finds that the

58

plaintiff's cross-motion fails to set forth any argument justifying a dismissal of the defendant's counterclaim. Indeed, in his motion, the plaintiff cites to no case law and sets forth no legal argument.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that Banknorth's motion for reconsideration of the December 30, 2003 Order is **DENIED**, and it is further

**ORDERED**, that the plaintiff's motion to file a sur-reply to his opposition to the motion for summary judgment is **DENIED**; and it is further

**ORDERED**, that Banknorth's motion for summary judgment for a judgment against the plaintiff in the principal amount of $174,798, plus attorneys' fees and costs, is **GRANTED**; and it is further

**ORDERED**, that Tucker's cross-motion to dismiss the defendant's counterclaim is **DENIED**; and it is further

**ORDERED**, that Banknorth is directed to file a separate motion for attorneys' fees and costs with an affidavit delineating (1) each category of the work performed in this case; (2) the hours billed for each category; (3) the hours billed by each attorney for each category; and (4) the total amount of fees and costs incurred for each category within 30 days from the date of this Order.

**SO ORDERED.**